**UNION CARBIDE CORPORATION, FOOD PRODUCTS DIVISION and Aetna Casualty & Surety Co., Appellants,**

v.

**Louise W. CANNON, Appellee.**

Supreme Court of Tennessee.

March 10, 1975.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, for appellants.

Edwin H. Arnold, Arnold, Winfrey, McMurray & Russell, Loudon, for appellee.

## OPINION

BROCK, Justice.

This is a workmen's compensation action. The trial court awarded to the appellee the statutory benefits provided for 10 percent permanent partial disability of the body as a whole. The appellants, the employer and the employer's insurer, have appealed to this Court contending that the claim of the appellee was barred by the one year statute of limitations as provided in T.C.A., Sections 50–1003 and 50–1017(1), that the appellee's claim should be barred for failure of the appellee to give notice as required by T.C.A., Section 50–1001, and, that there is no material evidence to support the finding of the trial court that the disability of the appellee was the result of an accident arising out of and in the course of her employment.

We are of the opinion that the record supports the finding of the trial court that the notice requirements were satisfied and that the appellee received an injury by accident arising out of and in the course of her employment on January 13, 1969, and that said injury has resulted in the disability which the trial court found to exist and for which compensation benefits were awarded. The defense that the appellee's claim is barred by the one year statute of limitations presents a substantial question which requires detailed treatment by the Court.

T.C.A., Section 50–1003, provides:

"The right to compensation under the Workmen's Compensation Law shall be forever barred, unless within one (1) year after the accident resulting in injury or death occurred the notice required by § 50–1002 is given the employer and a claim for compensation under the provisions of this law is filed with the tribunal having jurisdiction to hear and determine the matter; provided that, if within said one (1) year period voluntary payments of compensation are paid to the injured person or his dependents, an action to recover any unpaid portion of the compensation, payable under this law, may be instituted within one (1) year from the time the employer shall cease making such payments, except in those cases provided by § 50–1024."

T.C.A., Section 50–1017, provides:

"The time within which the following acts shall be performed under this law shall be limited to the following periods, respectively.

"(1) Limit of time of actions or proceedings. Actions or proceedings by an injured employee to determine or recover compensation, one (1) year after the occurrence of the injury; except as provided in § 50–1003."

The accident upon which the appellee bases her claim occurred on January 13, 1969, and she did not file her claim for compensation until May 28, 1971, more than two years and four months following said accident. However, the trial court found:

"From the evidence in the case the Court finds that the petitioner did sustain a compensable injury in January of 1969, that the full nature and extent of the injury was not manifested until the herniated disc was discovered by Dr. Purvis in the following April of the following year, 1970. Although that was more than one year before suit was filed in this cause the Court finds that payments were made by the company for treatment of the petitioner, as alleged, which would stay the running of the statute of limitations as to her."

There is material evidence in the record to support the finding of the trial court that the full nature and extent of the appellee's injury was not manifested until Dr. Purvis diagnosed a herniated disc on April 7, 1970. Between the date of the accident and the date Dr. Purvis diagnosed the herniated disc the appellee suffered much pain, lost considerable time from work, and was treated by several physicians, but no physician informed her that she suffered from a herniated disc or from any other disability which would be permanent in nature. This being true, we are satisfied that the one year statute of limitations did not begin to run on January 13, 1969, but, instead, began to run on April 7, 1970. It is well settled in this state that the running of the statute of limitations is suspended until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained. Imperial Shirt Corporation v. Jenkins, 217 Tenn. 602, 399 S.W.2d 757 (1966); Murray Ohio Manufacturing Company v. Vines, 498 S. W.2d 897 (Tenn.1973).

Nevertheless, the statute of limitations' defense still persists because the appellee did not file her claim until more

than one year following April 7, 1970, the claim having been filed on May 28, 1971. Thus, the defendants insist that the statute of limitations ran on April 7, 1971, and that the claim of the appellee was thereafter barred. On the other hand, the appellee contends that the running of the statute was suspended on May 29, 1970, because on that date a substantial portion of the bill of Dr. Purvis for surgical treatment of the plaintiff's herniated disc was paid by the Travelers Insurance Company. Travelers provided hospitalization and major medical insurance coverage pursuant to a group policy carried by the employer upon its employees, the premium for which was paid approximately one-half by the employer and one-half by the employees. Likewise, the appellee relies upon payments to Dr. Sidney Wallace on January 6, 1971, and April 17, 1971. In this connection, appellee relies upon that portion of T.C.A., Section 50–1003, above quoted, which states:

" . . . provided that, if within said one (1) year period voluntary payments of compensation are paid . . . an action to recover any unpaid portion . . . may be instituted within one (1) year from the time the employer shall cease making such payments . . . ."

It is true that the rule in this state is that voluntary payments of compensation by the employer or its insurance carrier within one year of the injury tolls the running of the statute. Adams v. Patterson, 199 Tenn. 603, 288 S.W.2d 453 (1956). It is likewise true that:

"Where the facts are sufficient to show that an employer or his insurance carrier has furnished an injured employee medical and hospital services, it is generally held that this constitutes [the] payment of compensation, or a waiver which suspends the running of the time for filing a claim for compensation." John Sevier Motor Company v. Mullins, 205 Tenn. 227, 326 S.W.2d 441 (1959).

And, it is the date of the last voluntary payment of medical bills, rather than the date of the last medical treatment, that starts the running of the statute of limitations. Chandler v. Travelers Insurance Company, 212 Tenn. 199, 369 S.W.2d 390 (1963); City of Bristol v. Reed, 218 Tenn. 173, 402 S.W.2d 124 (1966).

We first examine the claim of the appellee that the payment on May 29, 1970, of a substantial portion of Dr. Purvis's bill for surgical treatment of the appellee's injury was a "payment of compensation" which tolled the running of the statute of limitations. On May 29, 1970, the Travelers Insurance Company issued a draft in the amount of $270.00 payable to Dr. John Purvis for his treatment of Mrs. Cannon, appellee. Travelers Insurance Company carried the group hospitalization and major medical coverage at the employer's plant. The Travelers Company did not then and never had carried the employer's workmen's compensation coverage. This payment to Dr. Purvis was made pursuant to an application made to Travelers on a form styled "Physician's and Surgeon's Statement." One portion of this form is headed "This Section to be Completed by Employee" and in this portion is the instruction "If claim due to accident, state when, where and how it occurred" which instruction precedes a blank space to be filled in. This space is not filled in other than by a penned dash mark. Another portion of said form is headed "Attending Physician's Certificate" and it contains the following:

"Did this accident or injury arise out of patient's employment? Yes___, No_X_."

Immediately following that question is the following:

"If 'yes,' explain _____ _____."

Said Physician's and Surgeon's Statement is dated April 21, 1970, and was signed by both Dr. Purvis and by James H. Cannon, the husband of the appellee.

Dr. Purvis, when asked when the appellee first told him that there was any relationship between her back pain and the activities of her job, stated:

"I, frankly, don't remember. She may have mentioned this to me at some time along the course of my treating her; exactly when, I don't know. Of course, my attention was drawn more forcibly to it when I became aware of the fact that I was going to have to give a deposition in this thing and that this was what she was referring to, and we discussed it again yesterday. But, as I say, she may have mentioned this over a period of time. At the time I was really not too particularly interested in that point and I did not—apparently did not pursue it any further than the fact that she just bent over and picked something up."

The record does not disclose how the Travelers Insurance Company's claim form came into the possession of Dr. Purvis and why it was completed by him. There is testimony by the appellee that the employer made the decision whether a particular medical bill was to be paid by the Travelers Company, which carried the hospitalization coverage, by the Aetna Company, which carried the workmen's compensation coverage, or by the Metropolitan Company, which carried the nonoccupational disability coverage. Thus, the likelihood is that the Travelers form was supplied by the employer to Dr. Purvis. This would be consistent with the testimony of Mr. Modglian, the personnel relations manager of the employer, who stated that his first knowledge that the plaintiff was claiming, that her disability and injury resulted from the accident of January 13, 1969, was imparted to him on or about January 8, 1971, in a report from Dr. Wallace following an examination by the latter of the appellee to determine whether or not she was able to return to work at that time.

We think it also relevant that during periods of disability following the accident of January 13, 1969, the appellee filed several claims for disability benefits with the Metropolitan Life Insurance Company, which provided such coverage for the employees of the defendant employer, and that upon the forms provided for making said claims appeared the following:

"6. If an accident was involved, answer the following:

(a) When did the accident happen? Date ..........

(b) Were you at work when the accident happened? □ Yes □ No

(c) Give a brief description of the accident. ........................
................................"

The appellee did not fill in the blanks provided in said question 6 or otherwise give the information called for with regard to an accident. Said claim forms also had a section provided for information to be supplied by the employer which contained question 5:

"Has the claim been considered in connection with the workmen's compensation coverage? □ Yes ☒ No"

It thus appears that the payment on May 29, 1970, of a portion of the bill of Dr. Purvis was made by neither the defendant employer nor its workmen's compensation insurance carrier but was made by the Travelers Insurance Company under a group major medical and hospitalization insurance plan paid for partly by the employees and partly by the employer. Furthermore, there is nothing in the record to indicate that either the employee or the employer understood that said payment was being made for treatment of an injury by accident arising out of and in the course of the employee's employment. The employee did not assert, and the employer did not concede, that the payment was for treatment of a compensable injury. Under these circumstances, we hold that said payment cannot be considered to be a "volun-

tary payment of compensation" within the meaning of T.C.A., Section 50–1003, and that it, therefore, does not serve to toll the running of the statute of limitations. We hold that if the conduct of the parties indicates that payments of medical expenses are not made pursuant to an obligation imposed by the workmen's compensation statutes, they do not toll the running of the statute of limitations. See: Riccioni v. American Cyanamid Company, 26 N.J.Super. 1, 96 A.2d 765 (1953); Pacific Employers Insurance Company v. Industrial Commission, 127 Colo. 400, 257 P.2d 404; International Harvester Company v. Industrial Commission, 410 Ill. 543, 103 N.E. 2d 109; Larson's Workmen's Compensation Law, Section 78.43(b).

The payments by the employer on January 6, 1971, and April 17, 1971, of certain bills of Dr. Sidney Wallace do not alter the result. Both bills were for examinations of the appellee to ascertain whether or not she was able to return to work and, therefore, under the holding of this Court in Webb v. Rossville Home and Auto Supply Company, 483 S.W.2d 579 (Tenn. 1972) did not constitute "payments of compensation" within the meaning of the saving proviso contained in T.C.A., Section 50–1003. Furthermore, the payment made on April 17, 1971, even if treated as a payment of "compensation," could not toll the statute of limitations because it was not made within one year of the time when the statute of limitations began to run on April 7, 1970, as required by T.C.A., Section 50–1003.

We, therefore, hold that there is no material evidence in the record to support the finding of the trial court that the employer or its workmen's compensation insurance carrier made voluntary payments of compensation in the form of medical expenses for treatment of the petitioner within the meaning of T.C.A., Section 50–1003, which tolled the running of the statute of limitations. It is our conclusion that the statute of limitations of one year ran on this cause of action on April 7, 1971, more than a month prior to the filing of suit on May 28, 1971. Accordingly, the judgment of the trial court is reversed, the cause dismissed and all costs adjudged against the appellee.

FONES, C. J., and HARBISON, HENRY and COOPER, JJ., concur.

## OPINION ON PETITION TO REHEAR

The appellee has filed a petition to rehear in this cause which has been considered by the Court. The petition does not present any new arguments, or new authority, nor point out any material fact which was overlooked by the Court in its original opinion.

Accordingly, said petition to rehear is denied. Knox v. Batson, 217 Tenn. 620, 399 S.W.2d 765 (1966).

FONES, C. J., and COOPER, HENRY, and HARBISON, JJ., concur.